## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HISCOX INSURANCE COMPANY
INC.,

                    Plaintiff,

        v.

PRESIDIO INSURANCE, LLC,

                    Defendant.

CIVIL ACTION NO. 3:23-CV-02102

(MEHALCHICK, J.)

## MEMORANDUM

This matter arises out of alleged misrepresentations made by Defendant Presidio Insurance, LLC ("Defendant" or "Presidio") to Plaintiff Hiscox Insurance Company, Inc. ("Plaintiff" or "Hiscox"). Hiscox initiated this lawsuit on December 19, 2023, by filing a complaint ("Complaint") against Presidio. Hiscox seeks declaratory relief in the form of a declaration that (1) it owes no duty to contribute to the defense of Presidio or indemnify Presidio in two underlying tort actions and (2) it may rescind its insurance contract with Hiscox. (Doc. 1). Presently before the Court is a motion to dismiss filed by Presidio, requesting that this Court refrain from exercising its discretionary jurisdiction over declaratory actions in this case. (Doc. 1). For the following reasons, the motion shall be **DENIED**. (Doc. 7).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following factual summary is taken from the Plaintiff's Complaint. (Doc. 1). Hiscox insured Presidio under a Professional Liability – US Direct Errors and Omissions Insurance Policy (Doc. 1, ¶ 32). There are two other lawsuits against Presidio relevant to this matter that implicate Hiscox's interests as Presidio's insurer. (Doc. 1, ¶¶ 9, 18, 66). The first

lawsuit involves two individuals named Teddy Kalinowski ("Kalinowski") and James Connell ("Connell"). (Doc. 1, ¶¶ 17-20). Prior to January of 2019, Presidio, as an insurance broker, bound coverages with Liberty Mutual Insurance Company ("Liberty Mutual") for Kalinowski. (Doc. 1, ¶ 18). Kalinowski performed snow removal services and was allegedly responsible for Connell sustaining injuries as a result as a result of a slip and fall. (Doc. 1, ¶ 20). Connell submitted a claim to Liberty Mutual for his injuries, but Liberty Mutual disclaimed coverage on February 18, 2020 due to a snowplow exclusion in its insurance policy. (Doc. 1, ¶ 20-21). Presidio was allegedly copied on this February 18, 2020 disclaimer letter as well as a later disclaimer letter dated May 25, 2022. (Doc. 1, ¶¶ 22, 26). Presidio then applied for insurance coverage from Hiscox on or about August 12, 2020, without notifying Hiscox of Connell's potential claim. (Doc. 1, ¶¶ 31, 50). Connell filed a lawsuit against Kalinowski on January 7, 2021 and was awarded $748,433.12 in a Judgment of Confession on May 12, 2022. (Doc. 1, ¶¶ 23, 25). On December 20, 2022, Kalinowski assigned his rights of recovery against Liberty Mutual and Defendant to Connell, and on June 6, 2023, Connell filed a directed action against Liberty Mutual and Defendant. (Doc. 1, ¶¶ 28-29). It was only at this point that Presidio placed Hiscox on notice of the Connell claims, 34 months after beginning its insurance policy with Hiscox and 38 months after being copied on the February 2020 disclaimer letter. (Doc. 1, ¶¶ 22, 30, 50).

The second lawsuit relevant to this matter involves the Grange Insurance Company ("Grange"). (Doc. 1, ¶¶ 8-15). On August 4, 2021, Grange made a demand for indemnification against Presidio for amounts Grange paid for claims by one of its insured in a lawsuit involving commercial vehicles. (Doc. 1, ¶ 9). Grange alleges that Presidio mispresented the class of a certain vehicle to be covered by the Grange policy. (Doc. 1, ¶ 12).

2

As a result, Grange contends that it was required to defend and indemnify an entity called Shawnee Concrete in an action arising from a fatal accident involving the misclassified vehicle. (Doc. 1, ¶ 12-13). On July 29, 2022, Grange invoked an arbitration provision in the Agency Agreement between Grange and Presidio seeking reimbursement of all amounts paid in the defense and indemnification of Shawnee Concrete. (Doc. 1, ¶¶ 10, 14). Presidio notified Hiscox of the potential Grange claims on February 16, 2021 (Doc. 1, ¶ 15).

The insurance agreement between Hiscox and Presidio at issue expressly states:

"This policy does not apply to and We shall have no obligation to pay for any Damages, Claim Expenses, or Supplemental Payments for any Claim based on or arising out of any actual or alleged Wrongful Act that You had knowledge of prior to the Policy Period and had a reasonable basis to believe that such Wrongful Act could give rise to a Claim; provided, however, that if this Policy is a renewal or replacement of a previous policy issued by Us providing materially identical coverage, the Policy Period referred to in this paragraph will be deemed to refer to the inception date of the first such policy issued by Us.

(Doc. 1, ¶ 38).

The insurance policy also contains a provision noting that "in the event the Application contains misrepresentations which materially affect the acceptance of the risk assumed by Us under this Policy, this Policy shall be *void ab initio*." (Doc. 1, ¶ 40). Hiscox alleges that Presidio continually failed to notify Hiscox of any potential claims when Presidio renewed its insurance policy in 2021 and 2022. (Doc. 1, ¶ 51). Hiscox further asserts that as a result of Presidio's failure to notify Hiscox of the potential Connell claim at the time the policy was enacted or during any policy renewals, there is no coverage available to Presidio under the policy and the policy itself is *void ab initio*. (Doc. 1, ¶¶ 55-58). Consequently, Hiscox alleges that Presidio is not entitled to coverage on either the Connell claims or the Grange claims. (Doc. 1, ¶¶ 55-58).

3

On December 19, 2023, Hiscox filed its Complaint for Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 USC § 2201, ("DJA") seeking that this Court declare that Hiscox has no duty to cover, indemnify, or defend Presidio in the related state court proceedings and that Hiscox is entitled to rescind its insurance policy covering Presidio. (Doc. 1, at 12, 14). On January 29, 2024, Presidio field its motion to dismiss the Complaint and an accompanying brief in support. (Doc. 7; Doc. 8). On February 9, 2024, Hiscox filed its brief in opposition.[1] (Doc. 11-1). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

---

[1] Plaintiff is reminded of the requirements of Local Rules 7.6 and 7.8, governing structure of briefs in opposition. *See* L.R. 7.6 and 7.8.

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

5

III.   **DISCUSSION**

Presidio moves to dismiss the Complaint, asserting that the Court should decline to exercise jurisdiction over this claim under the DJA. (Doc. 8, at 4); 28 U.S.C.A. §§ 2201-2202. Hiscox, while acknowledging the broad discretion afforded to district courts in deciding whether to exercise jurisdiction over such claims, submits that the absence of a parallel state claim and the manifest weight of factors that the Third Circuit considers when determining to exercise jurisdiction suggest the Court should exercise jurisdiction. (Doc. 11-1, at 3); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014).

A.   **DISCRETIONARY JURISDICTION UNDER THE DJA**

According to the DJA, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C.A. § 2201. In passing the DJA, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,'" district courts should instead weigh "'considerations of practicality and wise judicial administration'" when deciding whether to extend jurisdiction in DJA claims. *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 288). Regarding the DJA's grant of discretionary jurisdiction, the Third Circuit has cautioned that "what is granted is an opportunity to exercise a reasoned discretion." *Bituminous Coal Operators' Assoc. v. Int'l Union, United Mine Workers of Am.,* 585 F.2d 586, 596 (3d Cir. 1978)

*abrogated on other grounds by Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212 (1979); *see also Reifer*, 751 F.3d at 140 ("federal courts have substantial discretion to decide whether to exercise DJA jurisdiction, and […] this discretion is bounded and reviewable."). The standard for review of district courts' decisions about hearing declaratory judgment actions is abuse of discretion. *Wilton*, 515 U.S. at 289-90 ("district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion.").

In *Reifer v. Westport*, the Third Circuit laid out a framework to guide district courts deciding whether to exercise jurisdiction over a declaratory judgment action. 751 F.3d at 146. *Reifer* held that district courts should consider eight factors, known as the *Reifer* factors when resolving whether to hear such claims. 751 F.3d at 146. These factors include:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

> *Reifer*, 751 F.3d at 146.

The *Reifer* factors are non-exhaustive. *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 207 (3d Cir. 2021) ("The eight *Reifer* factors are not exhaustive."). In insurance cases, the Third Circuit has provided further guidance related to declaratory judgment jurisdiction,

requiring courts to consider whether state law on relevant issues is unsettled. *See Safe Auto Ins. Co. v. Summy*, 234 F.3d 131 (3d Cir. 2000). *Safe Auto Ins. Co. v. Summy* delineates several additional factors district courts should weigh in "declaratory judgment actions where the state law involved is close or unsettled." 234 F.3d at 135.

Before reaching the eight *Reifer* factors or *Summy*'s additional guidance, however, the Third Circuit has instructed district courts to consider whether there are any parallel proceedings pending in state court.[2] *Reifer*, 751 F.3d at 144; *see Purcell v. Hennig*, No. CV 22-469, 2022 WL 1607456, at *7 (E.D. Pa. May 19, 2022) ("[o]ur Court of Appeals in *Reifer* is clear on the significance of a pending parallel state court action: it is not dispositive and is considered 'but one factor'—but one of 'increased emphasis'—for our consideration."). "[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Reifer,* 751 F.3d at 144. The Third Circuit has joined with other Circuits in placing "increased emphasis" on a lack of parallel state proceedings as a factor in its jurisdictional test. *Reifer*, 751 F.3d at 144; *see also Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997-98 (8th Cir. 2005); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 394 (5th Cir. 2003). If there are no parallel state proceedings, "district courts declining jurisdiction should be rigorous in ensuring themselves

---

[2] In cases in which there is a parallel proceeding pending in state court, district courts should further look to the factors set forth by the Supreme Court in *Brillhart v. Excess Ins. Co. of Am.* 316 U.S. 491, 495 (1942). ("Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.").

that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer,* 751 F.3d at 145.

In summary, the result of the holdings in *Reifer* and *Summy* is a two-step inquiry for district courts to conduct when deciding whether to exercise jurisdiction over declaratory actions. 751 F.3d at 144-6; 234 F.3d at 135*; see Tumi, Inc. v. Factory Mut. Ins. Co.*, No. CV2102752KMJBC, 2021 WL 4170051, at *2 (D. N.J. Sept. 14, 2021) (referring to the question of whether a parallel state court proceeding exists as a "threshold consideration" before reaching the eight *Reifer* factors); *see also Westfield Ins. Co. v. Arnold*, No. 1:23-CV-00784, 2023 WL 4977765, at *2 (M.D. Pa. Aug. 3, 2023) (finding that exercising DJA jurisdiction "turns on a two-step inquiry" in which the Court must first determine whether there is a parallel state proceeding before addressing the *Reifer* and *Summy* factors.). First, courts must determine whether a parallel state proceeding exists, and second, courts should weigh the *Reifer* and *Summy* factors. *See* 751 F.3d at 144-6; 234 F.3d at 135; *Westfield Ins. Co.*, 2023 WL 4977765, at *2. As such, this Court will begin its analysis by determining whether a parallel state proceeding exists before turning to the *Reifer* and *Summy* factors.

### 1.    The Existence of a Parallel Proceeding

First, the Court must determine whether parallel state proceedings exist in this case. *See Westfield Ins. Co.*, 2023 WL 4977765, at *2. Presidio does not address the question of a parallel proceeding in its brief. (Doc. 8). According to Hiscox, there is no parallel state proceeding because Hiscox is not a party to the underlying actions and coverage disputes are not before the state court in the underlying proceedings. (Doc. 11-1, at 6-7). The Court agrees with Hiscox that no parallel action exists.

For proceedings to be parallel, "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings." *Kelly v. Maxum Speciality Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017); *see also Shea v. Nationwide Prop. & Cas. Ins. Co.*, No. 3:22-CV-00494, 2023 WL 3412248, at *7 (M.D. Pa. Mar. 1, 2023), *report and recommendation adopted*, No. CV 3:22-494, 2023 WL 2810836 (M.D. Pa. Apr. 6, 2023) ("[t]he Supreme Court has defined a parallel state proceeding in this context as '*another* proceeding ... pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'"); *Westfield Ins. Co.*, 2023 WL 4977765, at *2 (finding that state court proceedings must be "truly duplicative" and "effectively the same" to be parallel) (internal quotations omitted). "Germane factors include the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties had been or could be joined." *Kelly*, 868 F.3d at 284. An underlying matter that has the mere potential to dispose of the same claims does not necessarily mean the matters are substantially similar. *Kelly*, 868 F.3d at 283 (holding that an underlying state tort proceeding in which an insurance company was not a party was not parallel to a declaratory judgment action undertaken by the insurance company to disclaim coverage).

The Court finds that a parallel proceeding does not exist. *Kelly*, 868 F.3d at 279. The two underlying tort matters involve Hiscox's interests, but Hiscox is not a party to those matters. (Doc. 1, ¶¶ 8, 66). Hiscox has instituted this declaratory judgment action in federal court as a party. (Doc. 1). These two matters do not "[involve] the same parties" or "[present the] opportunity for ventilation of the same state law issues." (Doc. 1, ¶¶ 8, 66); *Kelly*, 868 F.3d at 284 (quoting *Wilton*, 515 U.S. at 283). In fact, the circumstances here mirror those in *Kelly v. Maxum Speciality Ins. Grp* nearly exactly. 868 F.3d 274. In *Kelly*, an insured failed to

notify an insurer of underlying tort claims against the insured. 868 F.3d at 279. The Third Circuit did not find the underlying tort claims parallel to the insurer's declaratory action against the insured, requesting declaratory relief in the form of recission of its policy to the insured and a declaration of nonliability related to the underlying tort claims. *Kelly*, 868 F.3d at 279. Accordingly, the underlying state court tort action and the present declaratory judgment action are not parallel proceedings. *See Bhd. Mut. Ins. Co. v. First Presbyterian Church of Bethlehem*, No. CV 23-678, 2023 WL 7329446, at *3 (E.D. Pa. Nov. 7, 2023) (finding that a declaratory action filed by an insurer seeking a declaration of nonliability is not parallel to the underlying tort action because "[the plaintiff insurer] is not a party to the [u]nderlying [a]ction. That alone is enough to compel the conclusion that this action is not parallel to the state court matter."); *see also Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (finding that underlying state tort actions and declaratory actions related to whether the alleged torts are outside the scope of an existing insurance policy are not parallel).

### 2.   The *Reifer* Factors

Following the guidance of *Reifer*, the Court must next consider whether "the lack of pending parallel state proceedings is outweighed by opposing factors." 751 F.3d at 145. Other factors must outweigh a lack of a parallel proceeding because the Third Circuit places "increased emphasis" on this factor relative to others in the jurisdictional test. *Reifer*, 751 F.3d at 144. The Court will accordingly address the *Reifer* factors.

The first factor, the likelihood that a federal court hearing a declaratory action would resolve uncertainty, weighs in favor of exercising jurisdiction. *Reifer*, 751 F.3d at 146. Presidio does not expressly discuss the applicability of first factor to the present facts in its brief. (Doc. 8). Hiscox, however, argues that the first factor "clearly weighs in favor of exercising

jurisdiction, as declaratory relief would resolve the insurance coverage issues presented in this case." (Doc. 11-1, at 7). Here, the Court agrees that exercising jurisdiction "will resolve the uncertainty of obligation which gave rise to the controversy." *Reifer*, 751 F.3d at 146. Hiscox seeks a declaration that would make clear that it owes no obligation to Presidio under its insurance policy. (Doc. 1, ¶ 59). This factor thus favors exercising jurisdiction. *See Bhd. Mut. Ins. Co.*, 2023 WL 7329446, at *5 (E.D. Pa. Nov. 7, 2023) ("[w]hile a declaration by this court would not end all litigation flowing from the events of the schism, it would nevertheless 'bring about a complete termination of the parties' [insurance coverage] disputes without piecemeal litigation.'") (citing *DiAnoia's Eatery, LLC*, 10 F.4th at 206).

The second factor considers convenience to the parties. *Reifer*, 751 F.3d at 146. While Presidio again does not directly address the issue of convenience, Hiscox argues that this factor favors this Court exercising jurisdiction because (1) there is no inconvenience to the parties based upon location and (2) the parties have already begun litigating in federal court. (Doc. 8; Doc. 11-1, at 8). The Court finds that the convenience of the parties would be best served by the Court exercising jurisdiction over this matter. Although the Luzerne County Court of Common Pleas and this Court are not in the same city, they are within 21 miles of one another, and this Court finds that location will not pose a material inconvenience to either party. *Cf. Landmark Am. Ins. Co. v. Manracchia,* No. 18-4949, 2019 WL 3934913, at *3 (E.D. Pa. Aug. 19, 2019) (finding that a [d]efendant that was a citizen of New Jersey was not inconvenienced by Pennsylvania forum). Further, if this Court declines jurisdiction over this case, Hiscox will be forced to file a new lawsuit in state court and Presidio will be forced to prepare an answer to the same. (Doc. 11-1, at 8); s*ee Manracchia*, 2019 WL 3934913, at *3 ("Because this action already exists, it is arguably more convenient for the parties to litigate

12

their insurance coverage dispute in this federal forum, rather than start anew in state court.");

*see also Nationwide Prop. & Cas. Ins. Co. v. Zatyko*, No. 16-1010, 2016 WL 6804436, at *3 (E.D. Pa. Nov. 16, 2016) ("[T]he dismissal of this action in favor of a proceeding in state court would delay…the resolution of the underlying coverage dispute since any such resolution would require commencement of a new action in state court. As such, this factor weighs in favor of this Court exercising jurisdiction."). This factor thus weighs in favor of exercising jurisdiction. *See Mercado v. Snyder*, No. 1:21-CV-01743, 2022 WL 1609073, at *6-7 (M.D. Pa. May 20, 2022) (finding that when there was no inconvenience to either party, this factor favors exercising jurisdiction).

The third factor contemplates the public interest in settling the uncertainty at issue. *Reifer*, 751 F.3d at 146. Here, "the parties do not aver that any public interest is at stake other than the usual interest in the fair adjudication of legal disputes, an interest which the District Court is well-equipped to address," *Kelly*, 868 F.3d at 288, as would a state court. (Doc. 8; Doc. 11-1). This factor is thus neutral. *See Manracchia*, 2019 WL 3934913, at *3 (finding the third factor is neutral when there is no strong public interest in resolution of an insurance action in federal court over state court); *see also Westfield Ins. Co.*, 2023 WL 4977765, at *4 (holding that insurance obligations do not weigh against or in favor of federal court resolution).

The fourth factor asks whether an alternative remedy is available and relatively convenient. *Reifer*, 751 F.3d at 146. The parties do not put forth, nor can this Court think of, an obvious remedy more available and more convenient than adjudication before this Court. (Doc. 8; Doc. 11-1); *see Westfield Ins. Co.*, 2023 WL 4977765, at *4 (finding that it would be inconvenient for parties to an insurance obligation action to litigate in state court when a

13

federal action has already begun). As noted above, declining to exercise jurisdiction here would force the parties to relitigate their dispute in state court, rendering this federal court's refusal of remedy inconvenient. *See Zatyko*, 2016 WL 6804436, at \*4 ("[t]hough the parties to this litigation could seek the same declaratory relief in state court, to do so now,[] would require the commencement of a new action in state court[. . . rendering it] arguably more convenient for the parties to litigate their insurance coverage dispute in this federal forum."). Further, "[t]he state and federal courts are equally able to grant effective relief in these circumstances." *Kelly*, 868 F.3d at 289. Accordingly, this factor weighs in favor of exercising jurisdiction. *See Westfield Ins. Co.*, 2023 WL 4977765, at \*4 (noting that the lack of a more convenient available alternative remedy weighs in favor of a district court exercising its jurisdiction).

The fifth factor, as clarified by *DiAnoia's Eatery, LLC*, encourages restraint when the same issues are pending in state court, between the same parties. *See Reifer*, 751 F.3d at 146; *DiAnoia's Eatery, LLC*, 10 F.4th at 206 ("[t]he fifth factor's 'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding.") (quoting *Kelly*, 868 F.3d at 289). Again, Presidio does not address this factor expressly in its brief. (Doc. 8). Hiscox contends that this factor weighs in favor of exercising jurisdiction because there is no parallel state action. (Doc. 11-1, at 10). This Court finds that it need employ no "general policy of restraint" here. *Reifer*, 751 F.3d at 146. As noted above, the underlying tort action against Presidio has no bearing on the issue of a declaratory judgment, and there has been no allegation of any similar declaratory action filed in state court. (Doc. 1; Doc. 8; Doc. 11; Doc 11-1). Hiscox is not a party in the state court action, and to resolve issues of coverage

14

obligations, Hiscox itself must necessarily be a party. (Doc. 1, ¶¶ 8, 66); *Kelly*, 868 F.3d at 289 ("the insurance coverage dispute cannot be fully resolved without [the insurer]"). This factor weighs in favor of exercising jurisdiction. *See Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 137 (E.D. Pa. 2022) (holding that when the insurer is not a party to an underlying action, the fifth *Reifer* factor favors jurisdiction because "the issue of an insurer's obligations under an insurance policy is not pending in state court and [. . .] the insurance coverage dispute could not be fully resolved unless [the insurer] was a party to that action.")

The sixth factor requires courts to contemplate avoiding duplicative litigation. *Reifer*, 751 F.3d at 146. Presidio once again does not explicitly address the issue of duplicative litigation. (Doc. 8). Hiscox asserts that the fact that federal court litigation has already initiated, meaning that this Court's exercise of jurisdiction would *avoid* duplicative litigation. (Doc. 11-1, at 10). Here, there is no risk of "duplicative litigation" when the matter before the Court is the only matter addressing *this issue* and *these parties*. *Reifer*, 751 F.3d at 146. "[T]here is no reason…to be concerned about duplicative litigation as the issues in the two proceedings are distinct. Arguably, settling the dispute in the District Court may avoid duplicative litigation, considering that the parties have already begun to litigate the issue of coverage in the federal forum." *Kelly*, 868 F.3d at 289. This factor weighs in favor of exercising jurisdiction. *See Zurich Am. Ins. Co.*, 644 F. Supp. at 137 (finding that the sixth *Reifer* factor favors exercising jurisdiction when the declaratory action in federal court and the underlying action are distinct, and the parties have already begun litigation in federal court).

Turning to the seventh factor, the district court must strive to prevent "the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*." *Reifer*, 751 F.3d at 146. Presidio aptly points out that there is some

15

question as to why Hiscox chose to file this lawsuit in federal court instead of in the Luzerne County Court of Common Pleas. (Doc. 8, at 6-7). Hiscox responds that "[t]his action is the only action in which the subject insurance coverage issues are presented, and, thus, [sic] does not reflect an improper motive." (Doc. 11-1, at 10). Here, absent evidence that this decision was "driven by an improper motive," at this stage there is no suggestion that Hiscox was engaging in "procedural fencing" or "a race for *res judicata*." *Kelly*, 868 F.3d at 289; *Reifer*, 751 F.3d at 146. Notably, district courts in the Third Circuit have held that when a state court underlying tort action and a federal court insurance obligation proceeding are not parallel, the seventh factor does not weigh against exercising jurisdiction. *See Bhd. Mut. Ins. Co.*, 2023 WL 7329446, at *6 ("[the plaintiff insurer] cannot use a decision by this [federal district] court as grounds for *res judicata* in another forum because the claims presented here are not pending in any other court."). The seventh factor is thus neutral. *See Westfield Ins. Co.*, 2023 WL 4977765, at *5 (holding that the seventh factor "is inapplicable [w]here [] there is no parallel proceeding between the parties.").

In considering the eighth factor, district courts must contemplate the "inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." *Reifer*, 751 F.3d at 146. Presidio does not address this factor in its brief. (Doc. 8). According to Hiscox, this factor is neutral because it contends that any conflict of interest would be the same, regardless of the federal or state forum. (Doc. 11-1, at 11). This Court agrees with Hiscox that the eighth *Reifer* factor is neutral here. Where there is no indication that the insurance company is or will be a party to the underlying tort proceeding, there is no indication that a conflict exists for that insurance company in pursuing a declaratory judgment. *See Kelly*, 868 F.3d at 289 ("there is

no indication that a conflict exists for [the insurer] related to any obligations it has to defend [against a third party] in [a t]ort [a]ction. [The insurer] is not a party to the [t]ort [a]ction; nor is there reason to believe it should or might be a party…"). This factor is thus neutral. *See Foremost Ins. Co. v. Nosam, LLC*, No. 5:17-CV-02843, 2018 WL 417035, at *3 (E.D. Pa. Jan. 12, 2018) (holding that the eighth factor is neutral because the insurer "is not a party in the state tort action and, regardless, any inherent conflict of interest between [the insurer's] position in this declaratory judgment action and what might be raised in the state action would be the same regardless of whether the insurance coverage dispute is litigated in state or federal court."); *Westfield Ins. Co.*, 2023 WL 4977765, at *5 (finding that the eighth factor is neutral for the same reason as the court explained in *Foremost Ins. Co.*).

Accordingly, all eight *Reifer* factors are either neutral or weigh in favor of exercising jurisdiction.

### 3.    The *Summy* Question of Whether State Law is Unsettled

Having considered the presence of parallel proceedings and the *Reifer* factors, the Court must now address *Summy*'s additional guidance.[3] *See* 751 F.3d at 146; 234 F.3d at 135. To reiterate, *Summy* stands for the proposition that district courts should refrain from issuing declaratory judgments that would result in a district court deciding novel state law issues. 234 F.3d at 135 ("where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions."); *see Westfield Ins. Co.*, 2023 WL 4977765, at *5 ("As previously noted, *Summy* cautions against issuing

---

[3] The parties do not address the additional *Summy* guidance in their briefs. (Doc. 8; Doc. 11-1). Nevertheless, this Court will consider the *Summy* guidance to ensure a thorough analysis of the appropriateness of exercising its discretionary jurisdiction in the present declaratory action.

declaratory judgments over uncertain state-law issues.") (citing *DiAnoia's Eatery, LLC*, 10 F.4th at 197).

To determine the uncertainty of state law in this matter, the Court will first consider which state's law applies to this case. *See i2i Optique LLC v. Valley Forge Ins. Co.*, 515 F. Supp. 3d 358, 360 n.2 (E.D. Pa. 2021). The Court must apply the choice of law rules of the forum state, Pennsylvania. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). "Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it was made." *i2i Optique LLC*, 515 F. Supp. at 360 n.2 (citing *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966)) (citing *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011)). An insurance contract is made at the place of delivery. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) (finding that according to Pennsylvania's choice of law principles, insurance contracts are made at the location in which it was delivered). Where there is no clear indication of the place of delivery, the Third Circuit has held that the place of delivery is assumed to be the insured's domicile. *Crawford*, 221 A.2d at 880 ("In the absence of any proof as to the place of delivery, in the case of […] insurance contracts, there is a presumption of delivery at the residence of the insured."); *see i2i Optique LLC*, 515 F. Supp. at 360 n.2. Here, the insured is Presidio, whose principle place of business is located in Pennsylvania, and all Presidio's members are residents of Pennsylvania. (Doc. 1, ¶¶ 2-3). Therefore, Presidio's domicile is Pennsylvania. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (finding that limited liability companies (LLC) like Defendant are domiciled in their principle  of business and where its members are residents); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (holding than an LLC

takes on the citizenship of its members). Accordingly, since all of Defendant's are citizens of Pennsylvania, the insurance contract is governed by the Pennsylvania law. (Doc. 1, ¶¶ 2-3; Doc. 1-1, at 54-95); *see i2i Optique LLC*, 515 F. Supp. at 360 n.2 (determining that an insured was domiciled in the state in which its members lived).

The Court will now turn to whether the applicable state law is unsettled, thus cautioning against exercising jurisdiction. *Summy,* 234 F.3d at 135; *see Westfield Ins. Co.*, 2023 WL 4977765, at *5. Neither party addresses whether this matter involves novel state law issues. (Doc. 8; Doc. 11-1). While Presidio submits that "[s]tate law issues involving state law, alone, exist," it does not contend that any of those state law issues are novel thus implicating this Court's duty to exercise caution under *Summy*. 234 F.3d at 135. This case stems from Hiscox's disputed obligations to Defendant related to an insurance contract. (Doc. 1, ¶ 66). Interpreting an insurance policy does not implicate unsettled or uncertain state law issues. *See Westfield Ins. Co.*, 2023 WL 4977765, at *5 (finding that *Summy*'s additional guidance did not weigh in favor of dismissing a declaratory action based upon unsettled state law because a "[p]laintiff seek[ing] to clarify its obligations under an insurance policy [. . . ], which is a contract, does not require resolving novel state-law issues.").

Further, Hiscox's obligations to Presidio depend on the effect that Defendant's alleged misrepresentations in its Application have on the insurance policy at issue. (Doc. 1, ¶ 66). This issue is also not novel under Pennsylvania law. The Pennsylvania Supreme Court has held:

> "Where the statements made by insured in the application are warranted by him to be true, or where the policy expressly provides for its avoidance by the falsity of such statements, the insurer may avoid the policy by showing the falsity of statements material to the risk, irrespective of the insured's knowledge of their falsity or of his good faith in making them."

*Allstate Ins. Co. v. Singer*, 163 A.2d 74, 76 (Pa. 1960) (quoting *Evans v. Penn Mutual Life Ins. Co.*, 186 A. 133, 141 (Pa. 1936)).

Here, the insurance contract at issue expressly "provide[d] for its avoidance by the falsity of…statements," *Singer*, 163 A.2d at 76, made in the Application when it states:

> this policy does not apply to and We shall have no obligation to pay for any Damages, Claim Expenses, or Supplemental Payments for any Claim based on or arising out of any actual or alleged Wrongful Act that You had knowledge of prior to the Policy Period and had a reasonable basis to believe that such Wrongful Act could give rise to a Claim; provided, however, that if this Policy is a renewal or replacement of a previous policy issued by Us providing materially identical coverage, the Policy Period referred to in this paragraph will be deemed to refer to the inception date of the first such policy issued by Us.

(Doc 1, ¶ 38).

The insurance policy further states "in the event the Application contains misrepresentations which materially affect the acceptance of the risk assumed by Us under this Policy, this Policy shall be *void ab initio*." (Doc. 1, ¶ 40). Application of Pennsylvania law to this fact pattern is not an unsettled or open question, nor is it a matter of first impression in Pennsylvania state courts. *See Singer*, 163 A.2d at 76; *Evans*, 186 A. at 141. In fact, this matter has been well-settled in Pennsylvania insurance law for more than half a century. *See Singer*, 163 A.2d at 76; *Evans*, 186 A. at 141. As such, this case does not require that a district court resolve novel or uncertain state law issues. *See Shea*, 2023 WL 3412248, at *10-12 (finding that Pennsylvania state law was settled in an insurance dispute when the court was able to cite to caselaw dealing with similar facts and coming to a conclusion).

Where there is no parallel proceeding in state court, each *Reifer* factor either weighs in favor of exercising jurisdiction or is neutral, and the applicable state law is not unsettled or novel, this Court is persuaded that "sound and reasonable discretion" demand exercising

20

jurisdiction over this declaratory judgment action. 751 F.3d at 144; *see Kelly,* 868 F.3d at 279; *Summy,* 234 F.3d at 135. Accordingly, Presidio's motion to dismiss Plaintiff's Complaint is **DENIED.** (Doc. 7).

**IV.**   <u>C</u>ONCLUSION

For the foregoing reasons, Defendant's motions to dismiss is **DENIED**.

An appropriate Order follows.

**BY THE COURT:**

Dated: September 9, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**